Good morning, Illinois Appellate Court, 1st District Court is now in session in the 4th Division. The Justice Bertina E. Lampkin presiding, case number 1-8-1512, Saylor v. Delta Real Estate Investments. Good morning, everyone. With the lawyers for both sides, please say your names so that we will know who you are and who you represent. And for the appellant and the appellee, you have 15 minutes to argue. We will not interrupt your arguments, but after you are finished, we will take turns asking you questions. And whoever is arguing for the appellant, if you wish to reserve some time for rebuttal, please tell me so. Now, at this time, please let us introduce yourselves, please. Good morning, Justices. My name is Burton Ring, and I represent the appellants Ralph Sellier and Jane Sellier at Helenburg. And counsel, you're kind of low. I don't know if you can raise your volume a little bit. I tried that in the test, and is it better now, Justice? It is a little better, I have to say. And counsel, do you want to reserve some time for rebuttal? Yes, I'd like to reserve three minutes for rebuttal. All right, thank you. And counsel for the appellee? Good morning, Ms. Chief Justice, Your Honors. My name is Don Garvey, G-A-R-V-E-Y, and I represent Reed Partnership, AW Interest, LLC, and Rickden, LLC, the appellees. And I also represent Reed Partnership, which is a cross appellant. All right, thank you. All right, Mr. Ring, you can proceed. Thank you, Justices. There's a number of issues in this case. I'm going to start out by discussing the Section 80 issue, which was decided by the lower court in a summary judgment motion. And the court awarded summary judgment in favor of the landlord in this particular case. But there were six defects of handling the tenant's security deposit. And first of all, let's discuss all six of them to show why the court misapplied and erred in granting summary judgment. So number one is they did not have any address for the name of the bank. They only had the bank name, and they did not have the address of the bank. As the court well knows, the statute requires the name and address of the bank, and this court has a few times in Rule 23 opinions or orders awarded a tenant damages when the bank address was not disclosed to the tenant at the proper time. The second problem is the closing here occurred with the successor landlord on December 2nd, and we don't know what took place with the security deposit from December 2nd through December 5th. And that is very important. On December 5th was when Mr. Garvey here put the security deposit in his client's fund account. So we don't know the whereabouts of it for those three days. But the next problem as it goes into is putting the money in your client's fund account. That is a problem for two ways. The first way is because when you're putting money in a client's fund account under the Rural Professional Conduct Section 1.15, it has to be with informed consent of your client or the third party. Obviously, the sellers were not Mr. Garvey's client, and so they have to give informed consent. There was no informed consent in the record at all in granting summary judgment. None existed. They were never requested. The sellers didn't know about it. So there's no informed consent to comply with putting the money in a client's fund account. But how does that really violate anything? Well, the money in an ULTA account, the interest goes to the ULTA people. And the security deposit section says that all the deposit and the interest belong to the tenant. So you can't have it both ways. You can't have the ULTA people get the money, the interest, which it goes to them every month in your sweep of your account, but then the tenant can't own the interest either. So that's another problem. The next problem is that the itemization of the detail of the damages came from the landlord in June of 2014, much, much longer than the 45 days the statute allows. And that is the next problem. The final problem is that it was only in Jane's name. It wasn't in Ralph's name. And also the amount that they said was being in Jane's name was wrong. They said it was $3,300. So as we all know, the standard for summary judgment is all inferences are to the non-moving party. It's a drastic remedy. The court erred in granting summary judgment to the landlord in this case for those reasons. Let's go on to the section 60 count. In section 60, this is where the landlord admitted in their pleadings that they went in without two days of notice. And so let's look, and the court found that because the place was vacant and there were no damages suffered by the tenants, they're not awarding any damages. But let's look at section 60. Section 60 requires two days notice by the landlord to go in for the enumerated reasons contained in the statute, A through H. There is nothing in the record to show that they complied with that. They admitted that. It was not one reason why they went in to look at the place other than to just confirm that my client moved out. Secondly, when you look at the way the statute's written, it says the word shell is used five times in the direction about what the landlord must do. And so it's very directory and mandatory type of statute. And then when you get to the damage part, it says it's awarded the greater of one month of rent or two times actuals. Here the court awarded no money at all. But the way the statute's written, even though it says May, it's the greater of one month of rent, assuming that there's no damages, or twice the actual damages. The argument by the appellee says, well, hold it. The court is okay in doing that since they found their damages. They have discretion. But when this statute is directory or mandatory, they have to have some teeth to the statute. Otherwise, landlords in this case who were directed to do something by the statute could routinely violate that statute. And so when I quoted the Robinson case, they said just because the statute uses the word May instead of shell does not mean the court has discretion to award nothing. And so here the landlord-tenant ordinance has a lot of sections where there's no damages suffered by the tenant, but the court does award or the statute does provide damages to the tenant. Examples are section 80, the security deposit, section 95, not giving notice of your foreclosure, section 90, not giving your name and address, section 100, not providing the building violations, even though you can get them online for free. So there's another number of places in the RLTO where you can have no damages whatsoever and still get awarded automatically damages that's set forth in the RLTO. So the court's explanation that there's no damages is meaningless. The statute is mandatory and directory, and there must be the greater of one month of rent or two times actuals awarded. Here, it should have been one month of rent. So the court erred in that case as well. Let's go on to the issues presented by the landlord now about the section 40 and the section 130B problems. When you look at the complaint and you look at what they sued on, they sued under section 21 of the Rider to the Lease, that the landlord must pay the utilities. That's what they violated. There was no notice of default, and that was the sole breach. The court found the tenant breached it by terminating the gas account, okay? So it wasn't that they didn't pay the utilities as section 21 of the Rider to the Lease said, but they just terminated the gas. That was the court's determination of the breach. But when you look at section 40 and the various sections of section 40, none of those sections reference the violation that the court found. And if you look at section 40, they address, the landlord addressed sections B, sections D, and sections E. That's really keeping the premises that he occupies in a safe condition, keeping the plumbing fixtures in a clean condition, and using, in a reasonable manner, all the electrical plumbing, sanitary heating, and air conditioning, and elevator. Certainly, pipes is not an appliance. A toilet, a sink, a shower is an appliance, but certainly not a pipe. And here, the tenant didn't do something negligently against the pipe. The court found he terminated his gas account. So that doesn't fall under section 40 at all. When this court determined, even though it's unpublished decision, and I didn't quote it anywhere in my briefs, but only when I found out the panel here, I apologize for that, in the Borzon versus Peak Properties case, and that was- In my best opinion, you can't do that. Okay. All right, it's just because Justice Reed was involved with that one. In terms of the section 040, that, any violation of section 040 is contained from section 130B. So 130B of the RLTO references a violation of section 40. So when you look at section 040, there's no private right of damages to section 40, none whatsoever contained in that statute. It doesn't say if the tenant violates that, the landlord gets this or gets that. So in terms of that, both of us cite the Abbasi, Illinois Supreme Court case, that says, specifically in an RLTO case, that when there's no damages set forth in the section, there's no private right of damages, and both of us cite that case. And that's clear. Abbasi said under section 110 at that time, there was no private right of damages under section 110 because 110 didn't contain a private right of damages. Here, there's absolutely no private right of damages for a violation of section 40. So the only way you can get a violation of section 40 for damages, if you sue under or claim it under section 130. So let's look at section 130B. Section 130B discusses a lease violation or discusses a section 40 violation. Okay. Here, again, the violation was that the court found he terminated the gas account. Okay. So when you look at that, that is not a violation under section 130B either. But 130B has two other prerequisites, being they must be material and they also must be willful. The court found on my motion of reconsideration that there was no willfulness found. And when they announced their first decision, the court said, I guess I'm going to find willfulness. They had no findings. But on my motion reconsideration, they found there was no willfulness. So we have no willfulness. So there cannot be any damages under section 130 because the court found no willfulness. The other requirement of section 130B requires a statement of materialness. Here in their June 24th, 2014 letter, the amount of money they claim in that letter for the violation of not paying or terminating gas was $678. Putting aside the damages they claim caused by terminating the gas account, the $17,000 minus the security deposit, the only monies because that flow, the actual damages are only $678. That's a breach of contract amount. So when you look at the other damages you want, those are special damages. But special damages are they must be foreseeable. And there's no proof at trial that these damages, the 17,000 were foreseeable. And so you have a number of things that cause that. Are they foreseeable? No, they're not. We didn't know that the pipe was not insulated. We didn't know the thickness of the pipe. We didn't know the age of the pipe. When I cross-examined Mr. Sellier, which was part of my appendix, he admitted he didn't know the age of the pipe. He didn't know the thickness of the pipe. And he didn't even know that in the 58-page explanation of the law review that there could be so many different things causing a pipe explosion. The other problem is that the gas company, and there's a statute, and there's two statutes involved here. There's a termination of gas account that the utility company is prohibited by city law to terminate gas accounts during the wintertime. And so they have their own cause of action against the utility company. They sued the wrong party here. They should have sued the utility company for violating turning off the gas account because it's not allowed under city statute. The next city code that's really important here, what I quoted in my brief, is the code section 18-29-305.6, which it clearly says that a water, soil, vent, or waste pipe shall not be installed in the outside of a building in attics or crawl spaces, nor concealed in outside walls or in any other place subject to freezing temperatures unless adequate provision is made to protect it from freezing by insulation or heat by both. Clearly, the landlord violated that. They admitted that that pipe was not insulated and was in an outside wall. So again, this is not foreseeable at all, these type of damages. Obviously, the nonpayment for the $678 is foreseeable, and that's actual damages. But the rest of the monies are special damages, which are not allowed because they were not foreseeable at the time of making the contract. When you look at the appellee also tries to argue that the inclusion of the attorney fee section should be more section on Section 180 rather than Section 130B with that limitation. The problem with that argument when he quotes that the 1991 amendments is that when you look at the 1991 amendments to the RLTO, they actually deleted that section of 110 in the RLTO, which required the tenant to have the same restriction of getting attorney fees for the landlord's violation of 110. But when you look at what they deleted out in Section 110, that section, they made a new section called 110E. And when you look at 110E in his appendix in the RLTO, 110E allows damages by the tenant against the landlord for a violation of Section 70. And so they got rid of the section saying it has to be willful or material, and they deleted that. But they kept in the willful and material against the landlord that the landlord has to prove against the tenant. So it's a presumption that the city council, the legislator, knows the statute as it exists when they're making amendments. And the other qualification that Sutherland and the Illinois Supreme Court case in Madigan versus Birch says, when there's conflicting statutes and there's a general versus a specific, there's specific controls. And that's Sutherland's interpretation of a statute, Illinois Supreme Court, that says a specific controls. And so you have it that the specific under Section 130B controls the attorney fees by the landlord against the tenant. And because you need the willful- I'm sorry. I'm going to have to ask you to wind up because you've really reached your time if you want to reserve a couple of minutes for rebutt. And the last point I'd like to say in the motion to reconsider, because the landlord argued facts and not a change of law, it's under the he has the wrong standard contained in his brief. Thank you. Thank you, counsel. Mr. Garvey? Yes, your honors. Miss Chief Justice, your honors, may it please the court. I'd like to focus the court's attention initially on the facts of this case because I think the facts overwhelmingly establish that the conduct of the tenants here in violation of the ordinance was willful. Just for background, the tenants leased this property pursuant to a written lease in 2012 for one year, June of 2012 to June of 2013. And then they renewed it for a year from June of 2013 to June of 2014. And the sale took place on December 3, 2013. The tenants were advised by the landlord, the selling landlord, that they were selling the property. Unbeknownst to anyone, the sale use purchased a condominium in either late September or early October of 2013. And it wasn't until November of 2013 that they sent an email to the selling landlord asking for permission to terminate their lease early. They knew it ran until May 31, 2014, and they asked for permission to terminate it early. The landlord sent an email back saying, and the deceitful part of what they were doing was that they concealed that they had purchased a condominium, but instead used the premise that they needed to find a cheaper place to rent because Ralph Salyer wanted to help his mother who was ill with some financial support. Unfortunately, there was never any, he never produced any evidence and admitted that he had no records showing he gave his mother financial support. And he never disclosed that the real motive for moving, terminating, was that they had purchased a condominium. And then when they were told that they couldn't terminate early, they were given permission to sublease. But, and in fact, there's an email in which they went to their real estate agent asking if their agent would try to find a subtenant. So they knew in their minds that they had no right to terminate early. Nonetheless, without anyone's permission, at the end of November of 2013, they moved out without telling anyone. And then in the middle of winter, December, mid-December, Ralph Salyer cuts off the gas to the coach house. Now, this is a freestanding building in the back of the property. So as many, as there are in many cases in the city, there's an apartment building in the front and a separate coach house in the back. Any reasonable person knows that if you cut off the heat to a building in Chicago in the middle of winter, that this is a recipe for trouble. And Mr. Salyer admitted in his testimony that he knew of the cold winters in Chicago. He had lived here before. And nonetheless, he cut off the gas without telling anyone. He didn't tell the buyer, even though he had the buyer's email address. And Jordan Feldman testified that he never told Mr. Feldman that he was shutting off the gas. So these actions of the tenant were not forced upon them. They were willful, deliberate actions. And if the court, and the court in this case, the lower court, at the conclusion of the trial, found that their conduct was willful and made a finding. And so they filed a motion to reconsider. But in the motion to reconsider, they were obligated, the only basis for changing the court's ruling was an error in the application of existing law. So that standard of review for that is de novo.  And if, in fact, this court concludes that the conduct of the tenants was willful, then the decision can be affirmed under Section 130B because the conduct of the tenant was willful. In addition, that same willful concept touches upon the issue of whether or not the landlord's damages should be reduced by the amount of the insurance proceeds it obtained. Now, the sailors under their lease were obligated to obtain not only contents insurance, but to ensure the actual premises. So they would have had the right to make an insurance claim for the repairs caused by the flood from the burst pipe. And incidentally, that pipe was the testimony of Warren Salihar was that the cavity in which the pipe was located was insulated with pink fiberglass insulation, even though the pipe itself was not wrapped with a separate styrofoam tube. So to say that it was an uninsulated wall is not accurate. There was no code violation in that regard. But in any event, the sailors left the property knowing that it was the middle of winter. And because their conduct was willful, then it's proper to award damages under 130B. And it's also proper, we believe, to award damages under Section 180. The sailors paid the December rent. So they were clearly aware that they were tenants. They were clearly aware that they were obligated to pay the utilities under the lease. So because of the willfulness of their actions, the landlord should be entitled to recover damages under Section 130B. The arguments made in the motion to reconsider only argue that the motion, which is at RC 1267, I believe, RC 1617 to 1624, only argues that the definition of willfulness is the Black's Law Dictionary definition. There was no argumentation that there was some fact that required the court to change its finding of willfulness, only that the definition was the Black's Law definition. Now, we have cited cases that defines what willful means. And it's not that the party intends to harm something, but that the actions that they take are of their own volition and deliberate. And clearly in this case, the actions of the sailors in moving out and cutting off the gas was willful and deliberate. And there was also an element of deception, which justifies the application of the collateral source rule. Because they used a ruse that they were trying to help Mr. Sailor's mother, when in fact they had really purchased a condominium. So their statements to the landlord were deceptive and had an element of misrepresentation to them or concealment. So therefore, we think that the collateral source rule applies so that the damages, the $17,000 damage claim, was the amount of damages that should have been awarded to the landlord, not the reduced amount of $2,300. Now, with respect to the appellant's arguments, I'd like to address a few of those points. When the closing occurred, the seller was trying to give a credit to the buyer for the amount of the security deposits, but the buyers did not want to touch the money. And so that is why a separate check was written for all four security deposits and placed into my segregated funds account at Chase Bank on the 3rd of December, or I believe it was the 4th. The closing was on the afternoon of the 3rd. The money was put in on the 4th. And the separate accounts were established on the 5th of December. Now, the rules of professional conduct were not... This argument about the interest going to the IOLTA fund is not proper, does not hold water because the ethical rule 1.15 says that a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with the representation separate from the lawyer's own property. So the ethical rules required that that money be put into a separate account, which is an IOLTA account. And the very next day, the tenant accounts were opened at Chase Bank. So the fact that Ralph's name was not on the account was required because only Mrs. Salyer would give her social security number to the selling landlord. So there's no wrongful conduct that supports their arguments for reversal of the summary judgment. And they never argued in the trial court that some notice was not given within 45 days. That argument was never made in the trial court. And we pointed that out in our brief. Regarding Section 60, this directory mandatory argument. Section 60 says that the tenant may recover an amount equal to not more than one month's rent or twice the damage sustained by him, whichever is greater. The appellants are trying to make may into a shall with this interpretation, mandatory interpretation. But if you look at their argument, it runs this way. They're borrowing it from a criminal case, I believe, where the court did not give an admonition to a defendant who accepted a plea bargain. So the question is whether or not the failure by the court to give an admission defeated the substantial right of that client to a trial over the issues in his case. In this situation, the failure of the court to award damages to a tenant who admitted he moved out and was never coming back does not defeat the substantial rights of tenants to be free from improper entries by their landlords. So I don't think their argument, while it's clever, I don't think it's sufficient to turn the word may into shall. And I think that the trial just felt that the statute was giving him the authority to determine whether in this context it was proper to give the tenant any damage for this rather technical infraction, which consisted of Mr. Weisman opening the door and poking his head in to see if anybody was home. But the court felt that that was not sufficient to award damages, and I think that's a proper ruling. Regarding Section 40, if you look at our second amended complaint, which is the complaint that we went to trial on, Count 2 has the RLTO violations, and Count 2 specifies the various provisions of Section 40 that the landlord was claiming the tenant violated. They filed two motions to dismiss and a motion for summary judgment. At no time did they ever claim that there is no private right of action for damages under Section 40. So this really is not a proper case for this court to consider that point because it was not raised at the trial court level. We have, in our brief, as a backup, without waiver, explained how it would be, we believe under the Abbasi case, it would be proper to imply a private right of action if the court needs to go that direction. But we don't believe that ultimately that is the answer to this case. The two answers in this case are one, or the two questions are, was the tenant's conduct willful? If it was willful, then the landlord has the right to damages either under Section 130B or under Section 180. And it is our position, respectfully, that the changes to the ordinance begin with the preface that the purpose is to better housing in the city of Chicago. It's not the purpose of the amendment to punish landlords for wrongdoings in the past. The purpose is to better the housing in the city. And if you allow tenants to abuse housing, cut off the heat in the middle of winter, damage the premises so that the housing is diminished, then you're flying against the purpose of the ordinance. So I... Pardon? One minute. So we're asking this court to do two things, to affirm the decision of the trial court, and then also on the collateral source rule. The collateral source rule says, which normally only applies in a tort case, but it applies in a contract case where there is an element of willfulness or deceit. And here we're saying that the trial judge shouldn't have reduced our damages by the amount of our insurance proceeds because their conduct was willful and marked by deceitfulness. And in fact, the truth is they had insurance that would cover this loss, and it's that same insurance company which is responsible for the outcome of this appeal. Thank you very much. Thank you. First, to my partners, to Justice Reyes and Burr, I neglected to stop to see if you wanted to ask Mr. Ring any questions. So if you don't have any problem with me proceeding this way, I'm going to let Mr. Ring do his rebuttal. Then you'll be able to ask him questions, and we will then come back to the Appalachian Council. Is that all right? That's fine. All right. You can proceed, Mr. Ring, with your rebuttal. You have three minutes. Thank you, Justice Reyes. So let's just talk about, it seems like the standard review is appropriate to discuss at this point. And if you look at the standard review that's articulated in the Appalachian brief, and he uses a Nissan motor case, and he quotes a Nissan motor case to say that it's, because here, don't forget, the lower court granted my motion to dismiss, motion to reconsider, I'm sorry, finding that there was no willfulness found. And so what they're doing, the Appalachian is saying, they're challenging that finding in my motion to reconsider. But when you look at his standard, which is contained in the Nissan motor case, on page 13 of his brief, it says that the court, it's de novo, where the motion was based only on the trial's first application or purported misapplication of existing law, rather than on new facts or legal theories not presented at trial. Here, clearly, even listening to his argument and all the facts contained in his brief, he's arguing facts, why the court was wrong and granting my motion to consideration. But the Nissan case that he quotes is clear. They have to be arguing today in their brief, it was an error of law. They can't be citing any facts. So he's not really understanding the standard for contesting the granting of my motion to reconsideration. And he continues to do that with his argument today. So, and so we don't even have to listen to these facts because the court granted my motion following no willfulness and there's no facts at all to support any willfulness against Jane. She didn't testify at trial. The account wasn't her name, nothing at all. And when you look at the judge's original finding, he just said, yeah, I guess I find willfulness. Didn't say one fact at all to support his conclusion. When you look at the section 60, issue is that if the court's gonna come up with some exceptions, the exceptions really should be done by the city council. The court's gonna say the lower courts are firm because they found nobody was home or was vacant. That exception should be in the statute. Here, there's gonna be no difference between the place being vacant and no one being home. Many times a landlord go in when nobody's home. That's still a violation of section 60. Now, when you look at the excuses they present for the section 80 violations, the court can't consider them. Consider the Lawrence case again. The landlord had a number of excuses why they didn't pay the right amount of interest. The court says, no, it's strict liability. Thank you. Thank you, counsel. Justice Reyes, do you have any questions? Yes, I have a couple of questions. Mr. Ring, so as Mr. Garvey pointed out, Reed's counsel was bound by the rules of professional conduct, all right? There wasn't an account set up for your clients yet. So he put the security deposit in the IOLTA account. And then once there was an account available to put in for your clients, they did so. So I don't understand. I mean, isn't that what an IOLTA account is supposed to be for? To temporarily put it into a separate account and to protect the funds? When you look at the purpose of the IOLTA account, yes, it's supposed to protect funds. But what I'm saying is that when it's a third party, usually in your client agreement, you have that saying, hey, if I get money, I can put it in my client fund account. But here it's a third party. The sellers were not Mr. Garvey's clients. Because of that difference, the rules specifically say it must be informed written consent. There's no informed written consent. Putting that aside, there was many other options for the placement of the security deposit. They could have opened up a regular account, not put it in the client's fund account. They just could have established that account. They didn't do that. But when they still needed a written consent? Under section 115 of the ethics, they need informed written consent of the third party. They didn't get that. So it wasn't a safer route to go putting it in the IOLTA account? Well, I don't think that we have to sit here and determine whether or not it's safer or not safer. I mean, a lot of times you could put it in many different accounts that's safer than that. But the question is, does it comply with the statutes? And the problem with putting it in the IOLTA account, the biggest problem that I see is that the interest on that account goes automatically to the IOLTA funding that's required. But the RLTO section 80 says the interest and the deposit belong to the tenant. So by putting it in the IOLTA account, there's no way the interest can belong to the tenant. The interest by law and IOLTA account belongs to IOLTA, but then disperse it to the various charitable agencies. And that's a big problem. All right, so my other question is regards to the unauthorized entry, right? So the section in the statute was intended to protect tenants from harassment and having their use of the property disturbed. Here we have a vacant unit. Mr. Weissman looked in, he saw that it was empty. There was no furniture or anything else in there. The tenants had vacated the property. So where's the damages here? Well, that's a good question. And I agree that there's no damages. I have to concede that. And there's no harm at all to my clients at all. But the question then becomes, is this court gonna be the decider how the statute is written? There's no harm when you're not home and the landlord enters. I mean, if I'm not home and my landlord comes in and does something or looks around, there's no harm to me. But the statute then is putting, what you're saying then at that point is the court has to determine if there are damages and if there's any harm to the tenants. But the statute doesn't say that. It says, you shall not do this. And it uses the word five times the word shall. So we can't be put in a situation where the court's gonna weigh whether or not it was harmful to the tenant, whether or not the tenant was home and things like that. They would have been listed in the statute. The statute could have easily said, if the place is vacant, but the tenant is still paying rent, it's not a violation. If the tenant is not home, it's not a violation. The statute didn't say that. The statute does list an exception if it's an emergency. And then if it's an emergency, then you still have to give a notice after you enter the premises. So the statute does create an exigent circumstance or exceptions. But again, this is not an exception to that statute. Lawrence is clear. If the statute doesn't create exceptions, this court can create them for the statute. Okay. Mr. Garvey, I have a question. So you're indicating that- Wait, wait, wait, wait, counsel. First, I wanted to see if Justice Burke had any questions. Okay, all right, I'm sorry. Go ahead. Great. No questions? None? No. Sorry, I was muted. Yes, I have no questions. Thank you. Thank you. All right, then I'm sorry, Justice Red, you can go on. Okay, all right. Mr. Garvey, you indicated that section 130B applies. So does one section 30B apply in situations other than when the 10-day notice termination is provided when there's a breach? That's our argument that the damage section that's controlling is section 180, not section 130, because we did not seek to terminate the lease. And if you look at the first section of 130, it says if the tenant fails to pay rent, that the landlord may... Let's see if I can get to that. I apologize for the delay. A landlord, so section 130A says a landlord may also maintain an action for rent and or damages without terminating the rental agreement. And that's exactly what we did. And that's why we think that the best interpretation of this stat ordinance, and in this case, is that damages are recoverable, attorneys fees, that damages are recoverable under 130A, and attorneys fees are recoverable under section 180, that we do not really need to reach section 130B because we did not seek to terminate early our position. All right, and then with regards to your argument on willfulness, that's relating to the collateral source rule, right? The collateral source rule, and then if you're going under 130B, we would maintain that the same willfulness, if we're obligated to meet 130B in order to get attorneys fees, we believe the same proof of willfulness would authorize the award of attorneys fees under 130B. But we alternative, our main argument is 180 is controlling. Okay, all right, great, thank you. No further questions. Justice Burke, any questions for Mr. Garvey? No, thank you. All right, thank you. I thank you, gentlemen. We will take this case under advisement and we will stand adjourned. Everyone be safe.